IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| DAVID DEL TORO JR. | § | |
| v. | § | CIVIL ACTION NO. 9:05cv146 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

  The Petitioner David Del Toro, proceeding through retained counsel, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

  Del Toro was convicted on a plea of guilty of the offense of injury to a child, receiving a sentence of 17 years in prison. The Magistrate Judge summarized the underlying facts as follows:

> The facts of the case show that Del Toro gave a statement acknowledging that he placed a blanket over the face of his three-month-old daughter Alexyah to quiet her crying, and held it there for up to two minutes. When he removed the blanket, Del Toro said, he saw that she was having difficulty breathing, so he took her to the hospital. The medical records show that Del Toro told the hospital personnel that he put Alexyah down for a nap at about 4:30 p.m., and he lay down next to her at 5:00 p.m.; he said that he was awakened by a phone call at about 5:30 p.m. and saw that Alexyah was grey with labored breathing and unresponsiveness, so he brought her to the hospital. No mention was made of the blanket to the hospital staff.
>
> Nonetheless, the hospital staff suspected that the incident represented a "non-accidental trauma." Several mentions appear in the medical records to this effect, including notations that another child of Del Toro's had died under similar circumstances. On July 8, 2003, a physician named Dr. Okhuyson, from Texas Children's Hospital, completed a Physician's Statement Regarding Injury to a Child. This statement recounted Del Toro's statement that he had put Alexyah down for a

nap, but awoke because he heard "strange noises." He saw that she was "white" and brought her to the hospital. Dr. Okhuyson noted that Alexyah presented with severe neurologic, cardiac, and respiratory dysfunction with an unexplained cause, and that extensive workups had failed to indicate a cause. Question 5 on the form statement asks whether, in the doctor's professional opinion, the child's condition is consistent with the family's explanation, and to explain if the answer is no; the boxes for "yes" and "no" are not checked, but there is an explanation filled in. This explanation notes a history of infant deaths, including a sibling and a first cousin, under very similar circumstances, such as "choking on formula." The doctor said that this was "very troubling and suggestive of infanticide." The doctor also noted that Alexyah had a pulmonary hemorrhage at 1 month of age, which he thought was suspicious.

In his petition, Del Toro contended that he received ineffective assistance of counsel and that he is actually innocent of the offense. The Magistrate Judge ordered the Respondent to answer the petition, and Del Toro filed a response to this answer.

Del Toro's ineffective assistance claim revolves around the assertion that his trial attorneys failed to obtain expert evaluation of the medical records. Del Toro has an affidavit from a physician named Dr. Lloyd Wright, who says that in the doctor's opinion, there is a reasonable medical probability that Alexyah's injuries were not caused by Del Toro or any other person. Del Toro says that had counsel obtained this evidence, he never would have pleaded guilty and would have had a viable defense, which he believes would "necessarily have created a reasonable doubt" as to his guilt.

According to Del Toro, one of his attorneys, John Tatum, recommended a week before trial that Del Toro accept a plea bargain offer of 20 years and said that if he did not, he would be convicted and would receive a sentence of 60 to 65 years in prison. Del Toro did not want to accept this offer and so his family hired another attorney, Edward McFarland, to give a second opinion. McFarland met with Del Toro and his family and told him that he should accept the plea offer, which was now 17 years, or face conviction and a 60-year sentence. Del Toro says that his family did not want him to receive such a long sentence and urged him to accept the plea offer. Del Toro did so, but says that had his attorneys properly prepared the case, the medical evidence would have been available and he would not have pleaded guilty.

The Magistrate Judge's Report

On October 17, 2005, the Magistrate Judge issued a Report recommending that the petition be dismissed. This Report reviewed the evidence in the case, including the affidavits of Del Toro and his father, the affidavit of Dr. White, the medical records, the affidavits of the attorneys, and the testimony at the hearing on the motion for new trial. The Magistrate Judge acknowledged Dr. White's affidavit but noted that Del Toro overlooked other evidence in the record, most notably his own two statements that he had placed a blanket over Alexyah's head for some two minutes to stop her from crying. These statements went on to say that when he finally removed the blanket, Alexyah was having trouble breathing, so he took her to the hospital, where he did not tell the medical staff what he had done. The Magistrate Judge concluded that Del Toro's attorneys were aware of these statements and realized the impact that the admission of holding a blanket over an infant's face for some two minutes would have on a jury.

The Magistrate Judge also reiterated that the medical records, the source upon which Dr. White based his information, said nothing about the blanket, because Del Toro had said nothing about it, instead telling the medical personnel that he had simply laid down for a nap and awakened to find his daughter in respiratory distress. Dr. White's affidavit did not make clear if he formed his opinion on reasonable probability based on the account in the medical records or the markedly different account given by Del Toro to the police.

Although Del Toro appeared to argue that Dr. White's evidence would have necessarily created reasonable doubt and thus led to an acquittal, the Magistrate Judge rejected this contention. Instead, the Magistrate Judge stated that a jury hearing the case would have been faced on the one hand with the opinion of a doctor that there was a reasonable medical probability that Del Toro's actions did not cause Alexyah's injuries, and on the other with two statements by Del Toro that he had held a blanket over his daughter's head for up to two minutes and then saw that she was having difficulty breathing. The Magistrate Judge also observed that the discrepancy between Del Toro's statements to the hospital personnel and his statements to the police would likely not be

viewed in his favor by a jury. Consequently, the Magistrate Judge concluded that Del Toro had not shown that his attorneys rendered ineffective assistance by anticipating a conviction and stiff sentence, nor to recommend a plea bargain, even had Dr. White's evidence been available.

In this regard, the Magistrate Judge observed that Del Toro had the opportunity to ask this precise question of his attorneys, because they all testified at the motion for new trial, but he did not do so. The Magistrate Judge acknowledged that Dr. White's affidavit was "not insignificant,": but said that Del Toro had not shown that it was of such consequence as to override all of the other evidence in the case.

With regard to Del Toro's claim of actual innocence, the Magistrate Judge pointed out that under Fifth Circuit authority, the evidence of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for federal habeas corpus relief. Robison v. Johnson, 151 F.3d 256, 267 (5th Cir. 1998). The Magistrate Judge therefore rejected Del Toro's claim on this point as well.

## The Petitioner's Objections

Del Toro filed objections to the Magistrate Judge's Report on October 27, 2005. He says first that he objects to any implied finding that the failure to investigate was not constitutionally deficient. Del Toro argues that counsel has a duty to make a reasonable investigation and that counsel failed to carry out this duty.

Next, Del Toro objects to the Magistrate Judge's conclusion that counsel were not deficient in advising him. He says that the Magistrate Judge affords "full deference" to counsel's advice, even though this advice was tainted by the failure to investigate, and says that he has "always maintained his innocence."

Del Toro challenges the Magistrate Judge's conclusion that he did not suffer prejudice, saying that the Magistrate Judge: (1) employed a subjective rather than an objective standard; (2) failed to consider the "undisputed evidence" that Del Toro had protested his innocence; (3) exaggerates the significance of the confession and minimizes the importance of the exculpatory

evidence; (4) relied on "speculative and inadmissible" evidence; and (5) applied the wrong standard for evaluating the "reasonable probability" that the outcome would have been different. Del Toro thus objects to the conclusion that his plea was voluntary.

Turning to the issue of actual innocence, Del Toro says that the Supreme Court indicated in dicta that actual innocence would be cognizable in non-death penalty cases. He acknowledges that the Fifth Circuit has discounted this dicta but says that the Texas Court of Criminal Appeals has not, and states that the Supreme Court dicta is thereby "clear law" on the issue.

Del Toro says that the Magistrate Judge questioned whether Dr. White took into account the statements of the Defendant, and that the Magistrate Judge also noted that evidence that Alexyah had been sick with a respiratory infection for four days prior to her hospitalization could give rise to questions as to why Del Toro had placed a blanket over her head under such circumstances. However, Del Toro says, Dr. White's affidavit makes clear that his conclusions were based on the medical records, including the family history, the absence of external signs of injury, Alexyah's previous experience with respiratory failure when Del Toro was not present, and the absence of any indication in the medical records to establish to a "reasonable medical certainty" that non-natural causes plated a role in the episode. Del Toro also complains that the Magistrate Judge relied on "speculative information," asserting that the Magistrate Judge had speculated that there could have been available testimony from the doctors at Texas Children's Hospital that Del Toro had injured his daughter. He says that the speculation of counsel that such testimony would have been available does not prove that such evidence exists, because the State produced no medical evidence whatsoever. He says that references in the medical records to suspicions of un-natural causes of the injury are not competent medical evidence, particularly in light of Dr. White's affidavit.

Finally, Del Toro objects to the Magistrate Judge's conclusion, under 28 U.S.C. §2254(d), that the state court's adjudication of his ineffectiveness claim was contrary to or involved an unreasonable application of clearly established federal law.

## Review of the Objections

Del Toro's first three objections all center on the issue of prejudice. The Magistrate Judge concluded that any failure by counsel to investigate did not result in any prejudice because there was no showing that the discovery of the evidence would have influenced counsel to change his advice regarding the guilty plea. Mangum v. Hargett, 67 F.3d 80, 83 (5th Cir. 1995). Del Toro responds that whether counsel, as a "historical matter," would have changed their recommendation is not the issue; rather, the question is what effect the exculpatory evidence would have had on an attorney acting reasonably, under prevailing professional norms.

Stated correctly, the general standard for ineffectiveness claims is whether the conduct of the attorney fell below an objective standard of reasonableness, and, if so, that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Ward v. Dretke, 420 F.3d 479, 487 (5th Cir. 2005). In challenging the voluntariness of the guilty plea, the Petitioner must established that counsel's advice fell below the range of competence demanded of an attorney in a criminal case, and that but for counsel's alleged erroneous advice, he would not have pleaded guilty, but would have insisted on going to trial. This assessment would turn partially on a prediction of what the outcome of a trial might have been . Ward, 420 F.3d at 487, *citing* Armstead v. Scott, 27 F.3d 202, 206 (5th Cir. 1994).

In Armstead, the Fifth Circuit stated as follows:

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the prejudice inquiry will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. That assessment, in turn, will depend in large part on a prediction of whether the evidence likely would have changed the outcome of a trial.

Armstead, 37 F.3d at 206. Mangum, the case cited by the Magistrate Judge, also quotes Armstead for this very principle.

The Magistrate Judge focused on the question of whether the alleged failure to investigate led to a reasonable probability that but for this failure, the result of the proceeding would probably have been different. In undertaking this investigation, the Magistrate Judge necessarily

examined the likelihood that the discovery of the evidence would have led counsel to change his recommendation as to the plea. This is the proper inquiry under the prevailing Fifth Circuit authority.

Even were Del Toro correct, and the proper inquiry was whether a reasonable attorney - not the actual attorneys at issue in the case - would have changed his advice to plead guilty, Del Toro has still failed to show that he is entitled to relief. A reasonable attorney would have recognized the impact which Del Toro's statements would have on a jury, with or without Dr. White's evidence. Del Toro's objections state that Dr. White's opinion was based on the medical records, including the family history, the absence of external signs of injury, Alexyah's previous experience with respiratory failure when Del Toro was not present, and the absence of any indication in the medical records to establish to a "reasonable medical certainty" that non-natural causes plated a role in the episode, but as the Magistrate Judge pointed out, the medical records do not say that Del Toro placed a blanket over his daughter's head because Del Toro did not advise the hospital personnel of this fact. Thus, it appears that Dr. White's opinion may have been based on the assumption that Del Toro awakened to find his daughter in respiratory distress, as the medical records state, rather than the assumption that Del Toro placed a blanket over Alexyah's head for up to two minutes.

Del Toro says that the Magistrate Judge cited "speculative information" in the Report, saying that Magistrate Judge had speculated that there could have been available testimony from the doctors at Texas Children's Hospital that Del Toro had injured his daughter. The records from the hospital, as the Magistrate Judge observed, include a document entitled "Physician's Statement Regarding Injury to a Child, which notes a history of infant deaths, a sibling and first cousin, under "very similar circumstances," which the doctor found to be "very troubling and suggestive of infanticide." Another document contained a note that the consulting physician "agree[d] with the work-up of a possible non-accidental trauma."

In addition, the Magistrate Judge observed that the statements of Del Toro's attorneys make clear that they expected the doctors from Texas Childrens' Hospital to testify for the State, showing that they anticipated that there would be medical evidence supporting the theory that Del Toro had injured his daughter. While Del Toro argues that the attorneys' anticipations are not "evidence," the fact remains that consideration of the strength of the State's case is a necessary element in advising a client whether or not to plead guilty.

Del Toro argues that Dr. White's evidence demonstrates that the State would have been unable to prove causation. The question of causation under Texas law is one for the jury. *See* Goodman v. State, 66 S.W.3d 283, 287 (Tex.Crim.App. 2001). Even given Dr. White's evidence, the jury would nonetheless have faced a situation in which the evidence showed that Del Toro admitted to placing a blanket over his infant daughter's head, and then saw that she was in breathing distress; she was then taken to the hospital, arriving with what hospital records described as "severe neurologic, cardiac, and respiratory dysfunction." As the Magistrate Judge stated, a reasonable jury could have rendered a conviction based upon these facts, even had Dr. White's evidence been available, and Del Toro has failed to show that counsel acted unreasonably or unprofessionally in recommending a guilty plea.

However, Del Toro points out that his attorney said that he "saw [Del Toro's] statement in the record, whether you'd classify it as a confession or not, you know, but he and I went over the statement." He even claims that his statement contains "clear exculpatory material," noting that he said that "I put the baby blanket over her head for just a minute or two to keep her from crying, I didn't push the blanket over her face or anything like that, I just held it over her head." The fact that Del Toro's attorney did not use the precise word "confession" to describe the statement is of no significance. The fact that Del Toro did not actually push the blanket into Alexyah's face while holding it over her head may make the statement marginally less inculpatory than it might have been, but hardly makes it "exculpatory."

8

Next, Del Toro challenges the voluntariness of his guilty plea. He acknowledges that under the prevailing legal standards, when the ineffectiveness claim turns on the failure to discover exculpatory evidence, the court must review the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea; this assessment would depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial. Del Toro contends that this standard was not applied by the Magistrate Judge, but this is incorrect; the Magistrate Judge cited and applied this standard, relying upon the Fifth Circuit case of <u>Mangum v. Hargett</u>, 67 F.3d at 83.

In this case, Del Toro points to his affidavit as saying that he never would have entered a plea of guilty had counsel properly investigated the case, and that he only pleaded guilty because counsel's failure to investigate and prepare a defense made it probable that he would spend the rest of his life in prison for something he didn't do. Del Toro says that he is not relying merely on his own assertions, but on the existence of Dr. White's affidavit, which he says would have presented at least a "viable defense." Del Toro says that competent counsel, armed with a viable defense, would not have advised a defendant who maintained his innocence to accept a guilty plea.

As observed by the Magistrate Judge, Del Toro had the opportunity to pose this question directly to his attorneys at the motion for new trial, but elected not to do so. In addition, Del Toro has offered nothing beyond a bald assertion that a reasonable attorney, knowing of both Dr. White's evidence and Del Toro's statement, would have counseled against a guilty plea. As stated above, Dr. White's affidavit does not make clear that his conclusion that there is a reasonable medical probability that Del Toro's actions did not contribute to Alexyah's injuries was based on knowledge of the true circumstances, rather than the version of events which Del Toro told to the hospital staff. A reasonable jury could have found Del Toro guilty of injury to a child even with the evidence presented by Dr. White, and Del Toro has offered nothing to show that his attorneys' predictions of a lengthy sentence in the event of a guilty verdict were unreasonable or unlikely. Del Toro has failed to show that he suffered prejudice and his objections on this point are without merit.

9

Del Toro goes on to object to the Magistrate Judge's recommendation concerning his ground for relief of actual innocence. He cites Herrera v. Collins, 506 U.S. 390 (1993) as saying (in dicta) that actual innocence is cognizable in non-death penalty as well as death penalty cases. Del Toro goes on to state that "[t]he Fifth Circuit has discounted this dicta; the Texas Court of Criminal Appeals has not. Elizondo v. State, 947 S.W.2d 202 (Tex.Crim.App. 1996). Petitioner contends that Herrera is clear law on the issue, sufficient to form a basis for federal habeas relief and objects to the Magistrate Judge's contrary conclusion." He then goes on to argue that he is actually innocent of the offense.

As the Magistrate Judge said, the Fifth Circuit has held that the existence of newly discovered evidence relevant to guilt is not a ground for relief on federal habeas corpus. Robison v. Johnson, 151 F.3d 256, 267 (5th Cir. 1998). The Court specifically said that the Supreme Court's decision in Herrera "does not alter this entrenched legal principle." Robison, 151 F.3d at 267.

As in his petition, Del Toro cites Elizondo, a Texas state court case, in support of his federal habeas corpus application. The Magistrate Judge pointed out that a state court's interpretation of federal law is not binding on the federal courts, *see* Thompson v. Cockrell, 263 F.3d 423, 429 (5th Cir. 2001), but Del Toro did not address this, electing instead to argue that Herrera is "clear law" despite the Fifth Circuit's holding that Herrera did not alter the established rule that actual innocence is not a viable ground for relief in federal habeas corpus actions. His objections on this point are without merit.

Finally, Del Toro objects to the Magistrate Judge's conclusion concerning 28 U.S.C. §2254(d), which requires a showing that the state's adjudication of a habeas petitioner's claims be contrary to or involving an unreasonable application of clearly established federal law, as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. He has failed to show, as he argues, that the decision of the state court in denying his habeas petition was contrary to Supreme Court precedent, nor that it was an unreasonable application of the facts. Del Toro's objections are without merit.

The Court has conducted a careful *de novo* review of the pleadings in this cause, including the original petition, the answer filed by the Respondent, the Petitioner's response thereto, the state records, the Report of the Magistrate Judge, the Petitioner's objections thereto, and all pleadings, documents, and records in the case. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Petitioner's objections are without merit. It is accordingly

ORDERED that the Petitioner's objections are overruled and that the findings and conclusions of the Magistrate Judge are ADOPTED . It is further

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **29** day of **November, 2005.**

_____
Ron Clark, United States District Judge